UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CARNELL DAVIS,

        Plaintiff,                      Case No. 2:12-cv-17

v.                                            Honorable R. Allan Edgar

LOUIS MIRON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Baraga Maximum Correctional Facility. In his *pro se* complaint, Plaintiff sues Correctional Officers Louis Miron and Cherie Konrad.

Plaintiff alleges that Officer Hubble wrote two tickets against him for sexual misconduct on December 1, 2008. The following morning on December 2, Defendant Miron was serving breakfast trays in Plaintiff's housing unit. Plaintiff alleges that Miron opened his window shutter and looked at him, and then closed the shutter without giving Plaintiff his breakfast meal. Later that morning, Plaintiff asked Miron for a grievance form so he could grieve Miron for not giving him a breakfast tray. Miron responded, "You will get nothing from first shift! No medical kites, medical call-outs, paper, outgoing mail, nothing!" (Compl., ¶ 4, docket #1, Page ID#3.) Plaintiff further claims that every time Miron made a round in his housing unit that day, he intentionally slammed Plaintiff's window shutter to keep Plaintiff from sleeping and doing his legal work. While Miron was passing out lunch trays on December 2, he opened Plaintiff's window shutter and yelled, "you want to eat Hoe?" (Compl., ¶ 6, Page ID#6.) Without waiting for a reply, Miron slammed the window shutter closed and left without giving Plaintiff a food tray. Also on December 2, Miron opened Plaintiff's window shutter and stated, "you pull it out on females, pull it out on me and I'll back you off." (Compl., ¶ 7, Page ID#4.)

Plaintiff alleges that he received two additional sexual misconduct tickets from Officer Gendron on December 8, 2008. The next morning on December 9, Miron opened Plaintiff's window shutter and yelled, "So you caught another one yesterday!" (Compl., ¶ 9, Page ID#4.) When Miron was passing out lunch trays that day, he opened Plaintiff's window shutter and looked at him for a few seconds before slamming the shutter closed without giving Plaintiff a food tray.

Later that day, Miron went to Plaintiff's cell and called him a "sexual deviant" for the purpose of degrading and harassing Plaintiff for receiving sexual misconduct tickets.

Almost four months later, on March 26, 2009, Defendant Konrad wrote a sexual misconduct ticket against Plaintiff. Plaintiff describes the incident resulting in the misconduct charge as follows:

> On March 26, 2009, while being housed within the Unit of cedar, wing-A, Cell 122, Cherie Konrad (Known hereafter as Konrad), was making her daily Legal Mail rounds in the morning time. When she came to my cell, I placed my penis upon the food slot in an attempt to masturbate on Konrad. Upon Konrad seeing what I was attempting to do, she tried to close my food slot, which I prevented her from doing so by placing my hand against the food slot to hold it open. upon allowing Konrad to close my food slot, Miron came to my cell door giving me a threatening look.

(Compl., ¶ 14, Page ID#5.) Miron refused to give Plaintiff a lunch tray that day and told Plaintiff, "Your [sic] not going to eat for a long time." (Compl. ¶ 15, Page ID#5.) The following morning on March 27, Miron failed to provide Plaintiff with a breakfast tray. The same day, Miron told Plaintiff that he wanted to search his cell. Plaintiff refused to come out because there was not a camera and supervisor present to oversee the shackling and movement process, as required by policy. When Plaintiff refused his order, Miron shut off the water in Plaintiff's cell. When Konrad was doing her rounds, Plaintiff told her about Miron denying him meals and shutting off his water. Plaintiff further alleges that Miron denied him his breakfast on March 28 and his lunch on March 29.

For relief, Plaintiff seeks compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff claims that Defendant Miron denied him a total of seven meals over six days in 2008 and 2009.[1]  The deprivation of life's necessities, such as food or water, can constitute a claim under the Eighth Amendment, *see Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001), but the withholding of seven meals over six days, while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify as a "wanton infliction of pain."  *See Richmond v. Settles*, No. 09-6285, 2011 WL 6005197, at *7 (6th Cir. Dec. 2, 2011)

---

[1] For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam).  While more than three years have passed since Plaintiff's claims arising in December 2008, the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted.  *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).  Plaintiff's grievances against Miron remained pending until August, 31, 2009.  Plaintiff filed the instant petition less than three years later on or about January 12, 2012.  Thus, it does not appear that any of his claims are time-barred.

(deprivation of seven meals during six-day period does not rise to the level of an Eighth Amendment violation). Plaintiff does not allege that his health suffered as a result of the meal deprivation. He instead is asserting a claim for the mental anguish he allegedly suffered as a result of not receiving the meals. Such a claim is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008).

Plaintiff further claims that Miron verbally harassed him on several occasions, including calling him a "sexual deviant." Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey,* 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.") Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Miron arising from his alleged verbal abuse.

Plaintiff also alleges that Miron turned off the water in his cell after Plaintiff refused to come out of his cell for a shakedown. Plaintiff does not allege how long his water was turned off, but ostensibly could have had it turned back on by complying with Miron's order to come out of his cell. Plaintiff does not allege that he was deprived of drinking water or suffered any physical discomfort or injury as a result of having his water turned off. Allegations about temporary inconveniences, e.g, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis*, 257 F.3d at 511. Plaintiff, therefore, fails to state an Eighth Amendment claim.

### B. Retaliation

Plaintiff further claims that Miron denied him meals in retaliation for the sexual misconduct charges brought against Plaintiff for exposing himself to female officers. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails at the first requirement for a retaliation claim because his sexual misconduct toward female officers is not conduct protected by the First Amendment. *See Lockett*

*v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct.) Accordingly, Plaintiff fails to state a claim for retaliation.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 1/31/2012 /s/ R. Allan Edgar
R. Allan Edgar
United States District Judge